IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TANIA LASHER,** | * | |
| **Plaintiff** | * | |
| vs. | * | Civil No.  CBD-03-2991 |
| **ROCHE BROTHERS, et al.** | * | |
| **Defendants.** | * | |

******

## MEMORANDUM OPINION DENYING
## DEFENDANTS' MOTIONS FOR SUMMARY JUDGEMENT

Before the Court are Motion of Federal Realty Investment Trust for Summary Judgment ("Federal's Motion")(Docket No. 47) and Defendant/Cross-Defendant, Roche Brothers, Inc.'s Motion for Summary Judgment ("Roche's Motion")(Docket Item No. 50)(jointly referred to as "Defendants' Motions").  The Court has reviewed Defendants' Motions, and the related memoranda thereto.  No hearing is deemed necessary.  Local Rule 105.6 (D. Md.).  The Court hereby DENIES Defendants' Motions.

### I. Background

Defendant Federal Realty Investment Trust ("Federal") operates a shopping center in Rockville, Maryland.  Federal hired Defendant Roche Brothers, Inc. ("Roche") to perform snow removal operations for the parking lot areas of its shopping center when certain weather conditions occurred.  The contract for snow removal between Federal and Roche specified where to pile snow on the property.  On or about December 20, 2000, several inches of snow fall occurred in the region, resulting in the need for snow removal services Roche agreed to provide under the contract.  Roche cleared the snow from Federal's parking lot on December 20, 2000. Plaintiff claims that on December 30, 2000, she slipped and fell on ice in the parking lot

incurring injury. Plaintiff has filed claims against Federal as the owner of the property, and Roche as the snow removal contractor, alleging that both are responsible for either creating or allowing the existence of ice in the area of her fall.

Plaintiff contends that Roche piled snow on a concrete island next to a parking space which was used by the driver of the vehicle in which Plaintiff was a passenger. The contract between Federal and Roche specifies that "all snow must be stacked . . . at the lowest point of the parking lot and away from storm drains and fire hydrants." The snow on the concrete island where Plaintiff claims to have fallen was not an area specified under the contract as one of the designated areas for snow, nor was it the lowest point in the parking lot. Plaintiff claims that between December 20, 2000, and the time of her fall, vacillating temperatures caused snow that had been piled on the concrete island to melt and refreeze, creating a foreseeable dangerous condition. Federal has filed a cross-claim against Roche, asserting a common law claim for indemnification and contribution, as well as a contractual claim for indemnification.

## II. Standard of Review

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). A court must construe the facts alleged and reasonable inferences in favor of the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. Pulliam Inv.

Co., Inc. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

"Once the moving party discharges its burden . . . , the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Kitchen v. Upshaw, 286 F.3d 179, 182 (4th Cir. 2002). Where the nonmoving party has the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "The disputed facts must be material to an issue necessary for the proper resolution of the case." Thompson Everett, Inc. v. Nat'l. Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249-50. (citations omitted).

  **III.** **A Factual Issue Exists as to Whether Federal Had Actual or Constructive Notice with Sufficient Opportunity to Warn or Make Safe a Dangerous Condition.**

In Maryland, the duty that an owner or occupier of land owes to persons entering onto the land varies according to the visitor's status as an invitee (i.e., a business invitee), a licensee by invitation (i.e., a social guest), a bare licensee, or a trespasser. Tennant v. Shoppers Food Warehouse Md. Corp., 115 Md. App. 381, 387-88, 693 A.2d 370, 374 (1997)(citations omitted). The highest duty of care is owed to a business invitee, defined as "one invited or permitted to

3

enter another's property for purposes related to the landowner's business." Id. at 388, 693 A.2d at 374.  There can be no dispute but that Plaintiff, under these circumstances, was a business invitee.

Storekeepers, such as Federal, owe their business invitees, or customers, a duty of ordinary and reasonable care to maintain their premises in reasonably safe condition.  Moulden v. Greenbelt Consumer Serv.'s, Inc., 239 Md. 299, 232, 210 A.2d 724, 725 (1965).  The customer is entitled to assume that the storekeeper will exercise reasonable care to ascertain the condition of the premises and, if he discovers any unsafe condition, he will either take such action as will correct the condition and make it reasonably safe, or give a warning of the unsafe condition. Rawls v. Hochschild, Kohn & Co., 207 Md. 113, 117-18, 113 A.2d. 405, 407 (1955).  The duties of a storekeeper thus include the obligation to warn customers of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.  Tennant, 115 Md. App. at 388, 693 A.2d at 374.  Nevertheless, storekeepers are not insurers of their customers' safety, and no presumption of negligence arises merely because an injury was sustained on a storekeepers's premises.  Rawls, 207 Md. at 118, 113 A.2d at 407.  A storekeeper's liability under negligence principles for a customer's injuries arises only from a failure to observer the duty of ordinary and reasonable care.  Giant Food, Inc. v. Mitchell, 334 Md. 633, 636, 640 A.2d. 1134, 1135 (1994)(citations omitted).

Factually, Plaintiff's Answer to Interrogatory No. 8 suggests that Federal should have been aware of the potential danger given the slope and layout of the lot, the location of the drain and concrete islands, and that it should have been apparent to Federal that melting snow would flow toward said drains and would refreeze when temperatures dropped.  While there is no

4

record evidence that Federal created a dangerous condition as the property owner, Federal had a continuing duty to inspect.  It is also reasonable to assume that Federal was aware of the problems that ice, snow, and thawing can cause in a commercial parking lot given its instructions to Roche as to where to deposit snow under the snow removal contract, "all snow must be stacked . . . at the lowest point of the parking lot and away from storm drains and fire hydrants." The location of the snowpile, according to Plaintiff, was not at the lowest point of the parking lot.  Nearly ten days passed between the clearing of the lot by Roche and the alleged injury to Plaintiff.  According to the testimony of Federal's property manager, Patrick Dillon, he and "maintenance staff would make trips to the center to see if there was any refreezing."  Mr. Dillon also indicated that there ordinarily would be an inspection by Federal's personnel immediately following the snow removal services of Roche to "make sure snow was cleared as . . . we contracted them, to be make sure the snow was in locations we had kind of specified."  It is reasonable to assume that if Federal had conducted one or more inspections in the intervening period, Federal would have been aware of the large pile of snow that was allegedly deposited in an unapproved area under its contract with Roche.  The Court cannot state as a matter of law that Federal did not have constructive notice.

Federal suggests that Plaintiff did not know how long the condition existed before the fall and intimates that the freezing conditions could have occurred a moment before.  Plaintiff's lack of direct evidence of how long the dangerous condition may have existed is less controlling under the present facts.  The dangerous condition is not the snow pile itself, but what it could become by the mere change of time and temperature.  The snow was not in a naturally occurring state, but had been deliberately place in a large pile, arguably with Federal's approval.  Federal was on notice for a sufficient period to raise a factual issue as to whether the condition existed

long enough to be corrected.  See Deering Woods Condo Association v. Spoon, 277 Md. 250, 267-68, 833 A.2d 17, 27 (2002)(to show constructive knowledge invitee must demonstrate that defective condition existed long enough to permit one under a duty to inspect to discover the defect and remedy it prior to the injury).  It is not merely whether ice existed on the day of Plaintiff's fall, but whether Federal was on notice that water was running off of the concrete island toward the drain at any time prior to Plaintiff's fall under these vacillating temperature conditions.  In the 10 day period, if Federal should have been aware of the existence of ice, and failed to remedy the condition, jurors could find for Plaintiff against Federal.

If Plaintiff's evidence is believed, Federal was on notice of a large mound of snow placed at a non-approved potentially dangerous location, for a long period time when temperatures could cause thawing and refreezing.  In light of such notice, Federal could be charged with a duty to make safe by, inter alia, moving the snow, treating the area with chemicals or sand, or providing a warning to invitees so that each could take greater precautions for their own safety. "The burden is on the customer to show that the proprietor created the dangerous condition, or had actual or constructive knowledge of its existence, prior to the invitee's injury." Manns v. Giant Food, Inc., 161 Md. App. 620, 628, 871 A.2d 627, 630 (2005).  There is record evidence in this matter that Federal made regular inspections subsequent to the services provided by Roche, yet prior to Plaintiff's fall.

Federal suggests that Plaintiff does not know if the snow pile was the source of the snow, slush, or ice, which caused her fall.  This, however, is contrary to Plaintiff's deposition testimony wherein she states that black ice on which she fell came from "the pile of snow" that had melted and refroze.  Federal's criticism goes to the basis of Plaintiff's conclusion which the Court finds is a factual determination to be made under these circumstances.  While there may exist better

evidence available, neither expert nor direct evidence is required.[1]  Accordingly, under these circumstances, the Court does not find a sufficient basis to grant Federal's Motion for Summary Judgment.

### IV. There Is a Genuine Dispute of Material Fact as to Whether Plaintiff Was Contributorily Negligent.

Federal relies on Plaintiff's statement that "it didn't look like ice or I wouldn't have stepped on it" to suggest that Plaintiff was contributorily negligent as a matter of law.  Federal argues in effect that such a statement leads to the conclusion that Plaintiff saw, or should have seen, the existence of a dangerous condition prior to her injury.  While Federal's argument is reasonable, reasonable people could disagree about the import of Plaintiff's statement.  Jurors could reasonably conclude that Plaintiff exercised reasonable care for her safety by looking at the area, but could not perceive that an icy condition existed.  As a factual issue, this Court cannot rule that Plaintiff was contributorily negligent as a matter of law.

While a dispute rages as to whether Plaintiff is really describing "black ice," dirty ice, snow, dirty snow, slush, or some other condition, such questions are reserved for consideration by the trier of fact.  "Contributory negligence is that degree of reasonable and ordinary care that a plaintiff fails to undertake in the face of an appreciable risk which cooperates with the defendant's negligence in bringing about plaintiff's harm." McQuay v. Schertle, 126 Md. App. 556, 568 (1999)(citations omitted).  Contributory negligence is a question of fact for the jury to

---

[1] While Federal relies on the Court's determination of its pending motion in limine regarding expert testimony, the Court is not prepared to rule upon that issue at the present time.

decide.  Campfield v. Krowther, 252 Md. 88, 92 (1969).  There exists a genuine dispute of material fact, therefore the granting of summary judgment on this point is inappropriate.[2]

### V. There Is a Genuine Dispute of Material Fact as to the Date of the Accident.

Federal contends that Plaintiff's lack of certainty as to the date of the accident creates a basis for the granting of its motion for summary judgment.  This belief is misplaced.  While there is record evidence that Plaintiff has offered different dates, her vacillation under the present facts is not a sufficient justification for the relief sought.  Plaintiff has provided the dates of December 29, 2000, December 30, 2000, and January 9, 2001, with various explanations for her lack of certainty.  Such concerns regarding her recollection, candor, or other credibility issues are clearly matters for the trier of fact.  Accordingly, Federal's Motion on this basis is denied.

### VI. Federal' Entitlement to Indemnification From Roche as a Matter of Law.

Roche is responsible for its own negligence in tort law.  Under the contractual indemnity provision set forth in General Condition No. 5 of the agreement between Federal and Roche, it states that Roche is also obligated to "defend" and "indemnify" Federal against claims arising out of Roche's acts or omissions.  In the event the jurors determine that Plaintiff's injuries "arose out of the acts or omissions of" Roche, then Roche shall be required to indemnify Federal.  In the event the jurors determine that Plaintiff's injuries are due solely to the conduct of Federal, then Roche bears no obligation to indemnify Federal.

Another aspect of the indemnity provision is that Roche agrees to indemnify Federal regardless of whether the damage "is caused in part by a party indemnified hereunder."  Simply

---

[2] Once again, to the extent that Federal relies on the determination of its pending motion in limine regarding expert testimony, the Court is not prepared to rule upon that issue at the present time.

put, if Federal and Roche are both responsible for damages caused to another, Roche is required to indemnify Federal.

> Because such clauses often bring about harsh results, Maryland ordinarily construes exculpatory clauses, and will not construe such clauses 'to indemnify a person against his own negligence unless and intention to do so is expressed in those very words or in other unequivocal terms.'

Cornell v. Hawaiian Village Condominiums, Inc., 983 F. Supp. 640, 643 (D. Md. 1997)(citations omitted).  The words in the present agreement express Roche's intent to indemnify Federal against its own negligence in unequivocal terms.  Federal correctly states that if Plaintiff proves negligence by Roche "that was a contributing factor to her injuries, then Federal Realty is entitled to indemnity and fees, this is so even if the jury should also find negligence on the part of Federal Realty that also contributed to the injury."

Whethe Roche was negligent in its snow removal operations, or whether Federal was negligent in its "maintenance" of the lot, are both jury questions.  Given the need for a factual determination as to whether an injury was caused by Federal, or Roche, or both, the Court will deny this portion of Federal's Motion.

### VII. There is a Genuine Dispute of Material Fact as to Whether Roche Breached Its Contractual Duty to Federal.

The contract between Federal and Roche specifies that "all snow must be stacked . . . at the lowest part of the parking lot and away from storm drains and fire hydrants." The snow on the concrete island near the location where Plaintiff claims to have fallen was not an area as specified under the contract. Roche relies upon the testimony of Patrick Dillon, Federal's authorized representative. Mr. Dillon states that upon clearing the snow at the subject premises Roche's agents would typically contact him. Mr. Dillon would then inspect the premises for compliance. If the services performed by Roche were satisfactory, Roche claims that Mr. Dillon would "release Roche from further activities." Mr. Dillon, while testifying as the corporate designee, spoke in this instance from his personal knowledge, or lack thereof. In doing so he spoke of the "typical" circumstance, but, affirmatively stated that he did not have a particular recollection of this instance. Similarly, testimony from Michael Roche was equally vague as to the actual exchange in the conversation that may have occurred. While there is record evidence to support Roche's position, the Court cannot conclude as a matter of law that the so-called "release" of Roche is tantamount to a non-breach or waiver under the terms of the contract.

Assuming that the contract was not fully complied with, it is a question of fact whether the actions of Mr. Dillon were intended to "release" Roche for later discovered issues, including, inter alia, "melt and refreezing" conditions. There is no contention that Roche had a duty to return, or later inspect and maintain the premises. Nonetheless, a question of fact remains as to whether Roche was in full compliance with the contract or whether Roche was released from doing so.

Most fatal to Roche's position is the actual language of the contract which states "neither the making, nor the failing to make, such inspections, nor any expressed or implied approval of the work, shall relieve contractor of the responsibility to complete and guarantee the work as specified in this Agreement."  This language is clear and unequivocal.  Accordingly, this aspect of Roche's Motion must be denied.

### VIII. Roche Owed a Duty of Care to Plaintiff as a Result of its Contract with Federal.

Roche takes the position that any duty owed to Federal's invitees only existed during the hours its snow removal operations were occurring.  It suggests that once Federal inspected and "released" Roche, it was also released from any potential liability in tort or contract to customers of the premises.  Such notions have no basis in fact or law.

The passage of ten days from Roche's conduct to the date of Plaintiff's injury is a classic jury question in terms of foreseeability and causation.  The passage of ten days does not, however, eliminate Roche's duty to perform its snow removal operations reasonably .  Such operations were performed for the benefit of Federal's invitees.  To do so negligently placed each invitee in the foreseeable zone of danger.  For this analysis, the continuing responsibility of Federal to inspect and make safe or warn of dangerous conditions is of no benefit to Roche.  The Court also does not find DeCurtis v. T.H. Associates, 661 N.Y.S. 2d 642 (1997) instructive.  As noted by Plaintiff, this non-binding opinion relied upon a different factual circumstance.  In DeCurtis, there was "no evidence concerning the origin of the ice upon which the plaintiff allegedly slipped."  Here, Plaintiff's testimony is that the origin of ice was the snow pile on a nearby concrete island.

Generally, the New York courts do not recognize tort liability arising from a breach of contract. One exception, however, is where "the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm." <u>Espinal v. Melville Snow Contractors Inc.</u>, 746 N.Y.S. 2d 120, 122 (2002)(citations omitted). <u>Espinal</u> dealt merely with a snow contractor who cleared a lot. The plaintiff there tried to establish liability on the sole comment of the defendant's employee that snow plowing operations can sometimes leave residual snow or ice. The Court stated that merely plowing the snow does not create tort liability from a breach of contract. However, "a snow removal contractor . . . who 'creates or exacerbates' a harmful condition may generally be said to have 'launched' it." <u>Espinal</u> at 142. It could easily be argued that such exacerbation exists here.

Plaintiff's claim is not the Roche merely breached the contract of performance to remove snow, but that in removing snow Roche created a hazardous condition by piling the snow on the island. The Court concludes that a genuine dispute of material fact exists and denies this portion of Roche's Motion.

### **IX. <u>Conclusion</u>**

Based on the foregoing, Defendants' Motions for Summary Judgment are DENIED.

/s/
Charles B. Day
United States Magistrate Judge